UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X

UNITED STATES OF AMERICA,

                Plaintiff,

      -against-

RAYMUNDO I. HERNANDEZ,

                Defendant.

----------------------------------------X

13 Cr. 154-01(RWS)

SENTENCING
OPINION

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/8/14

**Sweet, D.J.**

      On August 7, 2013, Raymundo Hernandez ("Hernandez" or "Defendant") pled guilty to conspiracy to steal government funds and theft of government funds.

      For the reasons set forth below, Hernandez will be sentenced to 24 months' imprisonment followed by three years' supervised release, subject to the scheduled sentencing hearing on December 11, 2014. Defendant is also required to pay a special assessment of $200.

1

## Prior Proceedings

Defendant was named in a three-count indictment (the "Indictment") filed in the Southern District of New York on March 6, 2013.  The first count of the Indictment charges that from at least in or about January 2011, through on or about February 1, 2013, in the Southern District of New York and elsewhere, Hernandez, Andrius E. Gonzalez Francisco ("Francisco"), Jilfredo Gonzalez ("Gonzalez"), Dawin Brito ("Brito"), Isabel Garcia, a/k/a "Chavella" ("Garcia"), Cristino Antonio Rodriguez, a/k/a "Tony," a/k/a "Tonio" ("Rodriguez") and others conspired to engage in a scheme to obtain and case fraudulent income tax return checks, the value of which exceeded $1,000, in violation of 18 U.S.C. § 641 ("Count One").  18 U.S.C. § 371.

The second count of the Indictment charges that from at least in or about January 2011, through on or about February 1, 2013, in the Southern District of New York and elsewhere, Hernandez, Francisco, Gonzalez, Brito, Garcia, and Rodriguez, engaged in a scheme to obtain and cash fraudulent income tax return checks, the value of which exceeded $1,000 ("Count Two").  18 U.S.C. § 641.

The third count of the Indictment charges that from at least in or about January 2011, through on or about February 1, 2013, in the Southern District of New York and elsewhere, Hernandez, Francisco, Gonzalez, Brito, Garcia, and Rodriguez, possessed and used the names and personal identifying information of other persons during and in relation to the offense charged in Count Two of the Indictment in violation of 18 U.S.C. § 1028A.  The Indictment also included forfeiture allegation and substitute assets provisions.  See 18 U.S.C. § 981; 21 U.S.C. § 853; 28 U.S.C. § 2461.

On August 7, 2013, Hernandez appeared before the Honorable Sarah Netnurn in the Southern District of New York and allocuted to Counts One and Two in accordance with a plea agreement which stipulates the following:

> The Defendant admits the forfeiture allegations with respect to Counts One and Two of the Information and agrees to forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C), 21 U.S.C. § 853, and 28 U.S.C. § 2461, any and all property constituting or derived from any proceeds the Defendant obtained directly or indirectly as a result of the violations alleged in Counts One and Two of the Indictment.  The Defendant furthermore agrees to forfeit to the United States a sum in United States currency representing the amount of proceeds obtained as a result of the offenses alleged in Counts One and Two of the Indictment (the "Money Judgment").  It is further understood that any forfeiture of the

3

Defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon his addition to forfeiture.

The Defendant further agrees to make restitution in an amount ordered by the Court in accordance with 18 U.S.C. §§ 3663, 3663A, and 3664.  The obligation to make such restitution shall be made a condition of probation, 18 U.S.C. § 3563(b)(2), or of supervised release, 18 U.S.C. § 3583(d), as the case may be.

Offense Level

The Guidelines provision in effect as of November 1, 2012, apply in this case.

Pursuant to U.S.S.G. § 3D1.2(a), Counts One and Two are grouped together into a single group ("Group") because both counts involve substantially the same harm.  As both counts are equally serious, the offense level for each of the counts can constitute the offense level for the Group.

The Guideline applicable to the offenses charged in Counts One and Two is U.S.S.G. § 2B1.1(a)(2). Pursuant to U.S.S.G. § 2B1.1(a)(2), the base offense level is 6.

Pursuant to U.S.S.G. § 2B1.1(b)(1)(H), an increase of fourteen levels is warranted because the intended loss was more than $400,000 but not more than $1,000,000.

Assuming the Defendant clearly demonstrates acceptance of responsibility, to the satisfaction of the Government, through his allocution and subsequent conduct prior to the imposition of sentence, a two-level reduction will be warranted, pursuant to U.S.S.G. § 3E1.1(a).

Furthermore, assuming the Defendant has accepted responsibility as described in the previous paragraph, an additional one-level reduction is warranted, pursuant to U.S.S.G. § 3E1.1(b),

4

because the Defendant will have given timely
notice of his intention to enter a plea of
guilty, thereby permitting the Government to
avoid preparing for trial and permitting the
Court to allocate its resources efficiently.

In accordance with the foregoing calculations,
the applicable offense level is seventeen.

Criminal History

Based upon the information now available to the
U.S. Attorney's Office, the Defendant has zero
criminal history points, which places him in
Criminal History Category I.

Sentencing Range

Based upon the calculations set forth above, the
Defendant's stipulated Guidelines range is 24 to
30 months' imprisonment (the "Stipulated
Guidelines Range").  In addition, after
determining the Defendant's ability to pay, the
Court may impose a fine pursuant to U.S.S.G. §
5E1.2.  At Guidelines offense level seventeen,
the applicable Guidelines Range is $5,000 to
$50,000.

The parties agree that neither a downward nor an
upward departure from the Stipulated Guidelines
Range set forth above is warranted.

Accordingly, neither party will seek any
departure or adjustment pursuant to the
Guidelines that is not set forth herein.  Nor
will either party suggest that the Probation
Office consider such a departure or adjustment
under the Guidelines, or suggest that the Court
consider any such departure or adjustment.

The parties agree that either party may seek a
sentence outside of the Stipulated Guidelines
Range, suggest that the Probation Office consider
a sentence outside of the Stipulated Guidelines
Range, and suggest that the Court consider a
sentence outside of the Stipulated Guidelines
Range, based upon the factors to be considered in

imposing a sentence pursuant to 18 U.S.C. 3553(a).

Sentencing is scheduled for December 11, 2014.

**The Sentencing Framework**

In accordance with the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), and the Second Circuit's decision in United States v. Crosby, 397 F.3d 103 (2d Cir. 2005), the sentence to be imposed was reached through consideration of all of the factors identified in 18 U.S.C. § 3553(a), including the Advisory Guidelines. Thus, the sentence to be imposed here is the result of a consideration of:

(1)  the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)  the need for the sentence imposed —

    (A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    (B)  to afford adequate deterrence to criminal conduct;

    (C)  to protect the public from further crimes of the defendant; and

    (D)  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

6

(3)   the kinds of sentences available;

(4)   the kinds of sentence and the sentencing range established for —

    (A)   the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .;

(5)   any pertinent policy statement . . . [issued by the Sentencing Commission];

(6)   the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7)   the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). A sentencing judge is permitted to find all the facts appropriate for determining a sentence, whether that sentence is a so-called Guidelines sentence or not. See Crosby, 397 F.3d at 114-15.

**The Defendant**

The Court adopts the facts set forth in the Presentence Investigation Report ("PSR") with respect to Defendant's personal and family history.

**The Offense Conduct**

a. Tax Scheme Involving Puerto Rican Social Security Numbers and Electronic Filing Identification Numbers

7

Participants in the scheme employ stolen Social Security numbers ("SSNs") assigned to residents of Puerto Rico and file fraudulent federal tax returns seeking tax refunds on behalf of those individuals. Residents of Puerto Rico often do not file tax returns with the Internal Revenue Service ("IRS") because such filing is not required as long as all of the resident's income is derived from Puerto Rican sources. Thus, by using Puerto Rican SSNs, participants in the scheme, among other things, minimize the risks that a legitimate federal tax return already will have been filed by the person whose identity has been stolen. The fraudulently filed tax returns claim that the filer resides in one of the fifty states of the United States, for example, in New York State. Participants in the scheme obtain the federal tax refund checks in various ways, including by causing them to be mailed by the United States Treasury to addresses to which the participants have access. Fraudulently obtained tax refund checks may be cashed with the assistance of either corrupt bank employees, corrupt check cashers, or individuals with business checking accounts who may not be required to have the payee named on the face of the check, a person normally in Puerto Rico, appear at the time that the check is cashed. In some instances, participants in the

8

scheme cause tax refunds to be directly deposited into bank
accounts controlled by them.

Electronically filed tax returns are transmitted to
the IRS through an Electronic Filing Identification Number
("EFIN").  EFINs are issued by the IRS to electronic return
originators, such as online tax software provides (e.g.,
TurboTax, TaxSlayer), businesses (e.g., H&R Block), or
individual tax preparers (e.g., accountants) to enable them to
file tax returns with the IRS.

b. The Defendant's Scheme

Since approximately 2004, a co-conspirator ("CC-1")
has participated in a scheme involving the filing of fraudulent
income tax returns using the stolen identifying information of
residents of Puerto Rico.  Among other things, CC-1 obtained
EFINs from other co-conspirators and then used those EFINs to
filed fraudulent income tax returns after obtaining stolen
identifying information of residents of Puerto Rico that CC-1
obtained from other co-conspirators.  CC-1 additionally sold
these EFINs to other co-conspirators to enable them to also file
fraudulent income tax returns using stolen identifying
information of residents of Puerto Rico.  Further, CC-1

9

installed tax filing software on computers of other co-conspirators, taught co-conspirators how to use the tax software, and assisted them with setting up bank accounts to automatically have tax refunds electronically deposited into bank accounts.

At the time of CC-1's arrest, approximately 15 laptop computers in CC-1's home, as well as lists containing names, dates of birth, and Social Security numbers were observed.  From further conversations with CC-1, it was learned that through a network of individuals who know how to cash Treasury checks, CC-1 also provided fraudulent Treasure refund checks to others to cash, for a percentage of the face value of the check.

On February 4, 2013, voluntarily and at the direction of law enforcement, CC-1 placed multiple separate calls, which were recorded, to Hernandez, Francisco, and Gonzalez.  During these conversations, CC-1 informed Hernandez, Francisco, and Gonzalez, in Spanish, that CC-1 had Treasury refund checks that had to be cashed.  CC-1 arranged meetings with Hernandez, Francisco and Gonzalez.

On February 4, 2013, Hernandez was observed meeting with CC-1, after he moved the meeting location with CC-1,

because he did not like what he believed to be a police presence
in the area.  During the meeting, Hernandez agreed to use his
contacts to cash the checks and took possession of approximately
80 United States Treasury checks and agreed to cash those checks
for CC-1.  Hernandez was arrested shortly thereafter, at
approximately 8:30 p.m., after first fleeing from law
enforcement.  At the time of his arrest, the Defendant attempted
to evade arrest.  Hernandez ordered the cab to "go" and fled in
the cab, with the door open, at a high speed rate.  The
Defendant then left the cab and attempted to enter a private
home, where he was arrested.

        On February 4, 2014, Francisco met with CC-1 at a pre-
arranged location.  After a discussion of percentages, Francisco
took possession of approximately 50 United States Treasury
checks and agreed to cash those checks.  Francisco also
specifically asked CC-1 whether the checks were "white" or
"yellow," referring to United States Treasury checks sent via
the United States mail or blank checks printed using tax refund
software.  During the meeting, Francisco contacted an unknown
co-conspirator, confirming that Francisco received "yellow"
checks and asking about percentages.  Francisco was arrested
shortly thereafter at approximately 11:30 p.m.

On February 5, 2014, Gonzalez met with CC-1 at the pre-arranged location, along with Brito. Prior to arriving at the location, Gonzalez informed CC-1 that he would accept whatever checks CC-1 had, requesting a minimum of "150," which CC-1 understood to be 150 checks. During the meeting, CC-1, Gonzalez and Brito discussed, among other things, that they were both partners in cashing checks. After a discussion of percentages, CC-1 showed Gonzalez and Brito envelopes containing United States Treasury refund checks. CC-1 informed Gonzalez and Brito that one envelope contained 100 checks and another 50 checks, which Gonzalez and Brito both agreed to cash. Gonzalez and Brito were arrested shortly thereafter at approximately 2:20 a.m.

The Government informed that the United States Treasury refund checks obtained by the Defendant, which were in excess of 80, amounted to more than $400,000. Additionally, it should be noted that although the charges in the instant offense are based on one meeting, Hernandez was also under investigation by District of New Jersey, for his involvement in a conspiracy involving the cashing of millions of dollars in fraudulent United States Treasury checks.

c. Victim Impact

All the checks were recovered and none were cashed.
However, as informed by the Government, the IRS continues to be
the victim because of the losses associated with these types of
schemes in general and because these individuals were large-sale
check cashers. According to information obtained from
recordings, the defendants received checks, used their networks
to cash them, and then kept 35% or so of the face value. On
average, 35% to 50% of the face value is what the IRS has
observed with large scale check cashers.


**The Relevant Statutory Provisions**

The maximum term of imprisonment for Count One is five
years. 18 U.S.C. 371. The maximum term of imprisonment for
Count Two is ten years. 18 U.S.C. 641. For both counts, the
Court may impose a term of up to three years' supervised
release, pursuant to 18 U.S.C. § 3583(b)(2); U.S.S.G. §
5D1.1(a)(2). For both counts Defendant is eligible by statute
for not less than one nor more than five years' probation. 18
U.S.C. § 3561(c)(1). However, because the applicable guideline
range is in Zone D of the Sentencing Table, the Defendant is

13

ultimately ineligible for probation. U.S.S.G. § 5B1.1, Appl.
Note #2.

The maximum fine for each count is $250,000, pursuant
to 18 U.S.C. § 3571, for a total maximum fine of $500,000.  See
also U.S.S.G. § 5E1.2(c)(3)(A).  A special assessment of $100
for each count is mandatory pursuant to 18 U.S.C. § 3013.
Subject to the Defendant's ability to pay, in imposing a fine,
the Court shall consider the expected costs to the Government of
any imprisonment, probation, or supervised release pursuant to
U.S.S.G. § 5E1.2(d)(7).  The most recent advisory from the
Administrative Office of the United States Courts suggests a
monthly cost of $2,412.33 to be used for imprisonment, a monthly
cost of $278.95 for supervision, and a monthly cost of $2,244.17
for community confinement.

Pursuant to 18 U.S.C. § 1963(a)(1), (a)(2), and
(a)(3), the Defendant must forfeit all property real and
personal, involved in the offense or traceable to such property.
Pursuant to Rule 32.2 of the Federal Rules of Criminal
Procedure, "[t]he Court must include the forfeiture when orally
announcing the sentence or must otherwise ensure that the
Defendant knows of the forfeiture at sentencing.  The Court must

14

also include the forfeiture order, directly or by reference, in the judgment." Fed. R. Crim. P. 32.2(b)(4)(B).

**The Guidelines**

The November 1, 2013 edition of the United States Sentencing Commission Guidelines Manual has been used in this case for calculation purposes, pursuant to § 1B1.11(a).

The guideline for Count One, a violation of 18 U.S.C. § 371, is found in U.S.S.G. § 2X1.1, which instructs the application of the base offense level for the underlying offense, in this case a violation of 18 U.S.C. 641. Count Two is also a violation of 18 U.S.C. § 641. The guideline for a violation of 18 U.S.C. § 641 is found in U.S.S.G. § 2B1.1. Pursuant to U.S.S.G. § 2B1.1, the base offense level is 6.

As a result of Hernandez's actions, the intended loss to the IRS was more than $400,000, but not more than $1,000,000. Accordingly, a 14-level enhancement is warranted. U.S.S.G. § 2B1.1(b)(1)(H).

The Defendant has demonstrated acceptance of responsibility for the offense and has assisted authorities in

15

the investigation or prosecution of the Defendant's own misconduct by notifying authorities of the intention to enter a plea of guilty.  Accordingly, the offense level is decreased by three levels.  U.S.S.G. § 3E1.1(a)-(b).

The Defendant has no known adult convictions. Accordingly, Defendant has zero criminal history points and a Criminal History Category of I.[1]

Based on a total offense level of 17 and Criminal History Category of I, the guideline range of imprisonment is 24 months to 30 months.

The statutory and guideline range for a term of supervised release of up to three years' supervised release.  18 U.S.C. § 3583(b)(2); U.S.S.G. § 5D1.1(a)(2).  Such terms of supervised release run concurrently.  18 U.S.C. 3624(e).

The Defendant is ineligible for probation.  18 U.S.C. § 3561(c)(1); U.S.S.G. § 5B1.1, Appl. Note #2.

---

[1] Defendant does have a pending criminal charge in the District of New Jersey for conspiracy to steal government funds.  According to AUSA Sara Marin from the District of New Jersey, the case is moving towards the "next step of a plea or an indictment."  The case in the District of New Jersey has not been taken into account for purposes of calculating Defendant's Criminal History Category.

16

The guideline fine range for each count is $5,000 to $50,000, with a maximum statutory fine of $250,000 for each count.  18 U.S.C. § 3571; U.S.S.G. § 5E1.2(c)(3)(A).

## The Remaining Factors of 18 U.S.C. § 3553(a)

Having engaged in the Guidelines analysis, this Court also gives due consideration to the remaining factors identified in 18 U.S.C. § 3553(a) to impose a sentence "sufficient, but not greater than necessary," as is required by the Supreme Court's decision in Booker, 543 U.S. 220, and the Second Circuit's decision in Crosby, 397 F.3d 103. In light of the Court's statutory responsibility "to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing," Kimbrough v. United States, 552 U.S. 85, 102 (2007) (quoting 18 U.S.C. § 3553(a)), and having considered the Guidelines and all of the factors set forth in § 3553(a), it is determined that a Guidelines sentence is warranted in the instant case.

**The Sentence**

For the instant offense, Hernandez shall be sentenced to a term of 24 months' imprisonment on both counts to run concurrently, to be followed by three years' supervised release on both counts to run concurrently.

As mandatory conditions of his supervised release, the Defendant shall:

1. Not commit another federal, state, or local crime.

2. Not illegally possess a controlled substance.

3. Not possess a firearm or destructive device.

4. Cooperate in the collection of DNA as directed by the probation officer.

The mandatory drug testing condition is suspended due to imposition of a special condition requiring drug treatment and testing.

The standard conditions of supervision (1-13) are recommended with the following special conditions:

1. The Defendant shall obey the immigration laws and comply with the directives of immigration authorities.

18

2. The Defendant shall provide the probation officer with access to any requested financial information.

3. The Defendant shall not incur new credit charges or open additional lines of credit without the approval of the probation officer unless the defendant is in compliance with the restitution installment payment schedule.

4. The Defendant shall be tested via breathalyzer at the direction and discretion of the probation officer.

5. The Defendant shall submit his person, residence, place of business, vehicle, or any other premises under his control to a search on the basis that the probation officer has reasonable belief that contraband or evidence of a violation of the conditions of the release may be found.  The search must be conducted at a reasonable time and in a reasonable manner.  Failure to submit to a search may be grounds for revocation.  The Defendant shall inform any other residents hat the premises may be subject to search pursuant to this condition.

The Defendant is to report to the nearest Probation Office within 72 hours of release from custody.  The Defendant is to be supervised by the district of residence.

It is further ordered that the Defendant shall pay to the United States a special assessment of $200, which shall be due immediately.

Defendant does not have the ability to pay a fine and so the fine in this case is waived.

As a result of committing the offenses alleged in
Counts One and Two of the Indictment, the Defendant shall
forfeit to the United States, pursuant to 18 U.S.C. §
1963(a)(1), (a)(2), and (a)(3), all property real and personal,
involved in the offense or traceable to such property.  See Fed.
R. Crim. P. 32.2.

The Defendant is ineligible for voluntary surrender.
18 U.S.C. § 3143(a)(2).

It is so ordered.

**New York, NY**
**December    , 2014**

**ROBERT W. SWEET**
**U.S.D.J.**